# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO. 1:17CR138 |
|---|---|---|
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| vs. | ) | |
| JOHN S. MOBASSERI, | ) | **OPINION AND ORDER** |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

Before the Court is the issue of restitution under 18 U.S.C. § 2259[1] and whether Defendant John S. Mobasseri owes restitution to four identifiable victims of child pornography. Both the Government and Defendant have briefed and orally argued the matter. Because Defendant had a causal role in each of the victims' losses, the Court enters the following Order of Restitution.

## I. BACKGROUND FACTS

On April 11, 2017, a Grand Jury indicted Defendant with one count of Receipt and

---

[1] Congress amended § 2259 in 2018. However, Congress intended "that individuals who violate [Chapter 110] prior to the date of enactment of the [amendment], but who are sentenced after such date, shall be subject to the statutory scheme that was in effect at the time the offenses were committed." 18 U.S.C. § 2259B. Therefore, unless stated otherwise, all citations to § 2259 will be to the prior version of the law.

Distribution of Visual Depictions of Minors Engaged in Sexually Explicit Conduct, a violation of 18 U.S.C. § 2252(a)(2); and one count of Possession of Child Pornography, a violation of 18 U.S.C. § 2252A(a)(5)(B).

On December 4, 2017, Defendant pleaded guilty to both counts. In doing so, Defendant admitted that from July 13, 2009 to January 4, 2017, Defendant used software on his computer to search for and download images and videos depicting real minors engaged in sexually explicit conduct. Defendant utilized a peer-to-peer software that enabled third-parties to download the same material Defendant possessed. Because of this, Government investigators downloaded over 1,600 files, many of which contained child pornography.

Before sentencing, four victims sought restitution totaling $33,000. Each victim submitted an impact statement that highlighted the pain and suffering each endured, and continues to endure, because of the actions of Defendant and others like him.

On April 5, 2018, the Court sentenced Defendant to 136 months imprisonment and 5 years supervised release. The Court also imposed a total restitution amount of $30,000. Defendant appealed the sentence.

On April 17, 2019, the Sixth Circuit vacated the restitution award. *United States v. Mobasseri*, 764 Fed. App'x 549 (6th Cir. Apr. 17, 2019). The Sixth Circuit determined the Court did not provide rationale for its restitution order and therefore remanded the case back to this Court to do so. *Id.*

On July 26, 2019, the Court conducted a hearing on restitution. Both Defendant and the Government filed briefs outlining their respective positions prior to the hearing. The Government sought $30,000 as restitution for the four victims. Defendant disagreed and

believed that the Court should not enter an award of restitution because there is a lack of evidence that Defendant caused the victims' losses.

## II. LAW AND ANALYSIS

### A. Standard of Review

"A district court 'shall order restitution for any offense' under Chapter 110 of Title 18, which covers...offenses involving the sexual exploitation of children and child pornography in particular." *Paroline v. United States*, 572 U.S. 434, 443 (2014) (citing 18 U.S.C. 2259(a)). Restitution is mandatory. 18 U.S.C. § 2259(b)(4)(A). However, restitution is "proper under § 2259 only to the extent the defendant's offense proximately caused a victim's loss." *Paroline*, 572 U.S. at 448. The burden of proving the victim's loss is on the Government. 18 U.S.C. § 2259(b)(2); 18 U.S.C. § 3664(e); *Paroline*, 572 U.S. at 443.

The Court in *Paroline* realized the inherit problems of applying traditional concepts of causation to § 2259. *Id.* at 458. For example, the Court explicitly stated § 2259 does not require "but-for" causation. *Id.* Rather, the Court held that, in the special context of child pornography,

> where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.

*Id.*

When ordering restitution in this "special context," the amount should "not be severe" nor should it "be a token or nominal amount." *Id.* at 458-59. Rather, a restitution award must be "reasonable and circumscribed" to recognize the role of defendant in the causal process of the

-3-

underlying victim's losses and suited to that role. *Id.* at 459. This is not a "precise mathematical inquiry" but rather an exercise of "discretion and sound judgment." *Id.*

*Peroline* offers "rough guideposts" for determining an amount that fits the particular defendant's offense. *Id.* at 460. As a starting point, a district court should first determine the amount of the victim's losses by the continuing traffic in the victim's images. *Id.* Next, the court should consider certain factors that indicate the relative causal significance of the defendant's conduct in producing those losses. *Id.* Those factors include:

> the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved...; whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

*Id.*

The parties do not dispute that Defendant both "possessed a victim's images" and that the victims here have outstanding losses from the trafficking of their images. Moreover, it is impossible to trace a particular amount of the victims' losses to Defendant. In such a case, and despite Defendant's arguments to the contrary, *Peroline* and § 2259 require this Court to award restitution. The challenge for the Court will be to ascertain an amount that reflects Defendant's "role in the causal process that underlies the victim[s'] general losses."

### B. The Court's General Outline

The Court believes the following analysis accomplishes the goals of both § 2259 and *Peroline*. First, the Court will determine the "full amount of the victim's losses." 18 U.S.C. §

2259(b)(1). These losses will include medical services relating to physical, psychiatric or psychological care; physical and occupational therapy or rehabilitation; necessary transportation, temporary housing and child care expenses; lost income; attorneys' fees, as well as other costs incurred; and any other losses suffered by the victim as a proximate result of the offense. *Id.* at § 2259(b)(3)(A)–(F).

Next, while it is impossible to establish a "baseline harm" that fully encompasses the pain and suffering each victim experiences when their images are trafficked, the Court will set a baseline of $3,000 per victim. In doing so, the Court is persuaded by similar decisions in this circuit and elsewhere that have determined a baseline or financial harm experienced in the typical case. *See United States v. Reynolds*, 626 Fed. App'x 610, 620 (6th Cir. Sept. 11, 2015) (affirming the district court's use of $1,000 as a baseline restitution amount for each victim); *United States v. Gamble*, 2015 WL 4162924, *3 (E.D. Tenn. July 9, 2015) (setting forth five tiers of possible restitution amounts under § 2259, where $2,000-$3,500 would be awarded in the typical case); *United States v. DiLeo*, 58 F. Supp. 3d 239, 249 (E.D.N.Y. 2014) (finding that restitution awards for Vicky have generally ranged from $2,000 to $4,000).[2]

The Court will then analyze the *Peroline* factors. As many courts have previously found, certain *Peroline* factors are more helpful than others. *See United States v. Monzel*, – F.3d –, 2019 WL 3242386, *6 (D.C. Cir. July 19, 2019) ("as restitution factors, future convictions and total offenders are 'virtually unknown and unknowable.'"). Additionally, with respect the

---

[2] The Court is further persuaded by Congress' recent amendments to § 2259 which require courts to award "an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000." 18 U.S.C. § 2259(b)(2)(B) (eff. Dec. 7, 2018).

number of images Defendant possessed of each victim, the Court founds useful U.S.S.G. § 2G2.2(b)(7) and will increase the restitution amount in line with that guideline.[3]

Finally, the Court will review other factors that may lead to an increased award of restitution. Specifically, the Court will consider (i) the frequency of views and shares of the victims image, *Monzel*, at *6; *Gamble*, at *3; (ii) the means by which the images were acquired, i.e., trading images, paying for images, requesting certain images, *Monzel*, at *6; (iii) stalking or contacting the victim, *id.*; (iv) the defendant's individual contribution to the market for the victim's image, i.e., whether he sought out a particular victim's image, length of time trafficking in child pornography, *id.*; (v) whether defendant used the victim's images to groom other children for abuse or exposure to pornography, *id.*; and (vi) the nature of the victim's images, *Reynolds*, 626 Fed. App'x at 620.

C.  **Defendant's Offense Conduct**

Applying the above to Defendant, the Court finds Defendant's role to be comparatively minor. There is no evidence that Defendant produced the images or affirmatively distributed the images;[4] attempted to contact or stalked the victims; solicited or paid for particular images; or groomed other minors for sexual exploitation. Further, the Government did not put forward any evidence of how many times Defendant viewed a particular image of any of the victims.

However, Defendant certainly contributed to the victims' losses by trafficking the

---

[3] For a defendant who possesses 10-150 images, the Court will increase the award by $1,000; possession of 150-300 images, results in an increase of $2,000; possession of 300-600 images, results in an increase of $3,000; and possession of 600 or more images, results in and increase of $4,000.

[4] The Government conceded as much when it dropped the two-level increase for distribution under U.S.S.G. § 2G2.2(b)(3)(F). (Doc. 29, 1842).

victims' images. For seven and a half years Defendant amassed thousands of images of child pornography. Over that time, he used a peer-to-peer network. And while he did not affirmatively distribute pornographic images, he allowed third-parties access to these images for their use.

Therefore, while Defendant did not play a major role in the child pornography industry, he nonetheless contributed to its rampant growth while simultaneously exacerbating the harm to the identifiable victims.

**D.     Vicky**

Defendant possessed 47 images of Vicky. The Government requests $10,000 in restitution. Vicky herself seeks $10,000. Defendant believes the Court should not award any restitution to Vicky.

Vicky estimates her total losses to be $4,517,390.13, not including attorneys' fees. (Doc. 23-3, 1313).[5] However, Vicky began incurring losses prior to Defendant's behavior. Vicky first learned that her images were trafficked over the internet in December of 2006. (*Id.* at 1497). One hundred and twenty-nine months passed since Vicky's discovery and her demand for restitution in this case. Defendant trafficked in child pornography for ninety-seven of those months. Since Defendant was active for roughly 75% of Vicky's losses, the Court finds Vicky's reasonable losses attributable to Defendant to be $3,346,530.72.

A similar analysis can be done for Vicky's counsel's fees. As of May 10, 2014, counsel has expended over $490,000 in fees and $92,371.96 in out of pocket expenses. (*Id.* at 1641, 1648). However, a portion of counsel's representation and expenses occurred prior to

---

[5] All citations to the record reflect Docket Number, PageID Number.

Defendant's activities. Therefore, the Court will subtract 25% from counsel's fees and $19,062.52 in expenses. This totals $367,500 in fees and $73,309.44 in expenses.

As of September 12, 2017, Vicky has received $1,122,832.01 in restitution payment. (*Id.* at 1313). As of July 12, 2019, Vicky has received 1040 restitution orders. (Doc. 54, 2072).

Accordingly, the Court finds Vicky's losses attributable to Defendant to be $3,787,340.16. Moreover, these losses are reasonable. Vicky and the Government presented evidence that Vicky's life is "profoundly worsened by ongoing downloading, trading and possession of digital images." (Doc. 23-3, 1340). The Court certainly understands that conclusion.

Since Vicky's images have been "prolifically traded" (*id.* at 1305), authorities have arrested many offenders. Unfortunately, many more are likely out there. These facts support a lesser award of restitution. Moreover, while there is case law supporting the gruesome nature of Vicky's images, the Government has not advanced this argument before the Court. Thus, this aggravating factor will not be considered.

After thoroughly considering the evidence, the Court will enter a restitution order for Vicky in the amount of $5,000.[6]

### E. Chelsea

Defendant possessed 14 images and videos of Chelsea. The Government requests $10,000. Chelsea requests $10,000. Defendant believes zero restitution is the proper award.

An expert estimated Chelsea's future losses for 20 years at $226,375–$276,375. (Doc.

---

[6] Vicky's award consists of the base amount, $3,000; number of images, $1,000; and attorneys' fees, $1,000.

23-3, 1731-1732). Chelsea's attorney doubles this estimate to include "decreased earnings for life, increased costs to modify her personal appearance, increased costs for home security for life, and the need to relocate at great costs every single time a perpetrator who is released elects to move to her geographic area." (Doc. 23-3, 1744). While Chelsea may experience these costs, Chelsea's attorney is not the proper party to make this claim. Simply doubling an expert's medical costs is not adequate to support counsel's claim. Therefore, the Court will stick with the medical expert's estimated costs of $226,375–$276,375 as Chelsea's reasonable covered losses.

Unlike the other victims, Chelsea puts forward evidence that her attorneys' fees are $4,625 per individual defendant. Her attorney provides an itemization that she believe her firm will incur with each new defendant. While the Court respects counsel's attempt to individualize her fees per defendant, the Court finds the estimate too high. Therefore, the Court will deduct $1,625 from counsel's fees.

According to the Government, Chelsea has received one restitution award for $2,000. Apparently then, Chelsea has limited known past offenders.

The Court believes Chelsea's estimated losses are reasonable. Like the other victims, Chelsea experiences significant harm from the trafficking of her images. (Doc. 23-3, 1726-27). Therefore, the Court will enter a restitution order for Chelsea in the amount of $7,000.[7]

### F. Pia

Defendant possessed one image of Pia. The Government requests $5,000. Pia requests $5,000. As before, Defendant believes he owes Pia nothing.

---

[7] Chelsea's award consists of the base amount, $3,000; number of images, $1,000; and attorneys' fees, $3,000.

Pia estimates her losses at $91,900.00. (Doc. 23-3, 1714). These estimated losses encompass future therapy, transportation, after-school and vocational counseling. *Id.* Her attorney has incurred $10,187.13 in fees and expenses for Pia and her two sisters, who are also child pornography victims. (*Id.* at 1719). Counsel also estimates an additional $10,000–$15,000 in fees are necessary for the future. (*Id.* at 1683).

As of September 21, 2017, Pia has received $28,687.48 in restitution payments. (*Id.* at 1679). The Government states that Pia has received 171 restitution orders, but Pia's counsel is aware of at least 500 offenders with images of Pia. (*Id.* at 1710).

The Court believes Pia's estimated losses are reasonable. However, since attorneys' fees were aggregated for the three children, the Court finds counsel incurred $3,400 in representing Pia.

Pia was three or four-years old when her images were produced and trafficked. (*Id.* at 1677, 1710). The age of Pia therefore is an aggravating factor. However, she has comparatively low estimated losses at this time and has already received a significant portion of that amount. Moreover, Defendant possessed only one image of Pia and had a relatively minor role in further losses to Pia.

Accordingly, the Court will award $4,500.[8]

**G.    Cindy**

Defendant possessed one image of Cindy. The Government requests $5,000. Cindy requests $8,000. Defendant argues he owes Cindy no restitution.

---

[8] Pia's award consists of the base amount, $3,000; age of victim in image, $1,000; and attorneys fees of $500.

Cindy estimates her losses at $1,608,707.58. (Doc. 23-1, 1064). Included in this amount is over $309,000 in past medical counseling, $1,180,000 in future lost wages and over $92,000 in attorneys' fees. (*Id.*) According to the Government, Cindy has received 453 restitution orders. There is no indication how much Cindy has actually received in restitution.

Like Vicky, Cindy first learned her images were trafficked over the internet prior to Defendant's behavior in this matter. (*Id.* at 1057). Therefore, the Court will subtract $50,000 from the past medical and counseling, for a total estimated loss of $1,558,707.58.

Again, Defendant played a relatively minor role in Cindy's overall losses. He possessed only one image of Cindy. While there is evidence that Cindy's abuse and images range from infancy to twelve-years old (*id.* at 976), there is no indication of her age in the image Defendant possessed.

Therefore, the Court will award Cindy restitution in the amount of $4,000.[9]

### III. CONCLUSION

The Court Orders Defendant to pay a total of $20,500 to the identifiable victims as follows: Vicky, $5,000; Chelsea, $7,000; Pia, $4,500; and Cindy, $4,000. These amounts are neither severe nor a token or nominal amount. Rather, the awards reasonably reflect Defendant's role in the causal process of the victims' losses.

**IT IS SO ORDERED.**

   **s/ Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**

**Dated: August 12, 2019**

---

[9] Cindy's award consists of the base amount, $3,000; and attorneys fees of $1,000.